IN THE UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF OHIO

EASTERN DIVISON

| | | |
|---|---|---|
| SARAH KATE STERLING, | ) | CASE NO.1:20-CV-01046-SL |
| | ) | |
| Plaintiff, | ) | JUDGE SARA LIOI |
| | ) | |
| v. | ) | |
| | ) | MAGISTRATE JUDGE |
| COMMISSIONER OF SOCIAL SECURITY, | ) | WILLIAM H. BAUGHMAN, JR. |
| | ) | |
| | ) | REPORT AND RECOMMENDATION |
| | ) | |
| Defendant. | ) | |

**Introduction**

Before me by referral[1] is an action by Sarah Kate Sterling under 42 U.S.C. under 42 U.S.C. § 405 seeking judicial review of the 2019 decision of the Commissioner of Social Security that denied Sterling's 2017 application for disability insurance benefits.[2] The Commissioner has answered[3] and filed the transcript of the administrative proceedings.[4] Pursuant to my initial[5] and procedural[6] orders, the parties have briefed their positions[7] and

---

[1] The matter was referred to me under Local Rule 72.2 for a report and recommendation by United States District Judge Sara Lioi in a non-document order entered May 13, 2020.
[2] ECF No. 1.
[3] ECF No. 11.
[4] ECF No. 12.
[5] ECF No. 6.
[6] ECF No. 13.
[7] ECF Nos. 15 (Sterling); 18 (Commissioner); 19 (Sterling reply).

1

filed supporting fact sheets and charts.[8] The parties have met and conferred with the objective of clarifying and resolving issues,[9] and have participated in a telephonic oral argument.[10]

For the following reasons, I will recommend that the Commissioner's decision be affirmed.

### Facts and the ALJ's Decision

This is a claim for closed period of disability between November 21, 2012 and December 31, 2017, which was the date last insured.[11] Sterling was 38 years old on the date last insured.[12] A 2018 report from a consultative psychological examiner states that Sterling graduated from college, is married with two young children and lives next to her parents.[13] The ALJ concluded that Sterling did not engage in any substantial gainful activity during the period at issue.[14]

The ALJ found that Sterling had the following severe impairments: depression, anxiety, bipolar disorder, and obsessive-compulsive disorder.[15] In addition, the ALJ

---

[8] ECF Nos. 15, Attachment (Sterling); 18, Attachment (Commissioner).
[9] ECF No. 20.
[10] ECF No. 23.
[11] Tr. at 32.
[12] *Id*. at 31.
[13] *Id.* at 290.
[14] *Id*. at 14.
[15] *Id.*

2

determined that edema of the right foot, gastroesophageal reflux disease and obesity were non-severe impairments.[16]

Further, the ALJ stated that none of Sterling's mental impairments, considered singly or in combination, met or equaled a listing.[17] In making this finding, the ALJ considered whether the paragraph B criteria of listings 12.04 (bi-polar and depressive disorders), 12.06 (anxiety related disorders) and 12.08 (personality and impulse control disorders)[18] were satisfied.[19] Specifically, to meet the B criteria a claimant must have at least one extreme or two marked limitations in the following four areas of functioning:

(1) understanding, remembering or applying information;
(2) interacting with others;
(3) concentrating, persisting or maintaining pace;
(4) adapting or managing themselves.

As to Sterling, the ALJ found that she had only moderate limitations in all four areas of functioning.[20]

---

[16] *Id.* at 14-15.
[17] *Id*. at 15.
[18] The paragraph B criteria of listings 12.04, 12.06 and 12.08 are identical. *Parham v. Comm'r*, 2020 WL 8771343, at *13 (N.D. Ohio Aug. 28, 2020) (report and recommendation), adopted *Parham v. Comm'r*, 2021 WL 408998 (N.D. Ohio Feb. 5, 2021) (Lioi, J.).
[19] Tr. at 15.
[20] *Id*. at 15, 16, 18 and 19.

Based on these findings, as well as on Sterling's testimony at the hearing, the medical evidence[21] and the opinion evidence,[22] the ALJ found that Sterling had a residual functional capacity to perform a full range of work at all exertional levels, but with the following non-exertional limitations:

> The claimant is limited to performing simple, routine, and repetitive tasks, but not at a production rate pace (i.e., assembly line work); limited to simple work related decisions in using her judgment and dealing with changes in the work setting; and able to occasionally interact with supervisors and co-workers and never interact with the public.[23]

In discussing the medical evidence, the ALJ noted that treatment records from 2016 and 2017 show that Sterling received both medication and counseling for her impairments.[24] Those records also indicate that she benefitted from changing her medication in July 2017 and that by December 2017 "reported that her anxiety was okay, she saw her counselor regularly, and she was taking Xanax sparingly, as her last prescription was in July of 2016."[25] By 2018, at a consultative psychological examination in January, the examining doctor opined that Sterling was capable of managing her funds, had no difficulty with understanding, remembering or implementing ordinary instructions, and that she had only minimal limitations in the areas of maintaining attention, concentration, persistence and pace, or with interacting with others.[26] Finally, in April

---

[21] *Id*. at 22-26.
[22] *Id*. at 26-30.
[23] *Id*. at 21.
[24] *Id*. at 22.
[25] *Id*. at 23.
[26] *Id*.

4

2018, Sterling herself reported that "her anxiety was well controlled with Buspar and Fluozetine, and her new counselor was helpful."[27]

As to the opinion evidence, the ALJ found that the opinions of state agency psychological consultants Patricia Kirwin, Ph.D. (March 2018) and Cynthia Waggoner, Psy.D., (June 2018) were persuasive in part,[28] as was the January 2018 opinion of the consulting examining psychologist, Charles Misja, Ph.D.[29] The ALJ determined that the May 2018 opinion of Sterling's counselor, Nancy Breckinridge, M.S., was unpersuasive.[30]

The ALJ then found that Sterling could not perform any of her past relevant work as a billing manager, financial planner or bank teller.[31] With the assistance of testimony from a vocational expert, the ALJ further found that Sterling could perform the jobs of document preparer, addresser and surveillance system monitor, and that jobs in these categories exist in sufficient numbers in the national economy.[32] Accordingly, Sterling was found not disabled.[33]

**Issue for Judicial Review**

Sterling presents a single issue for judicial review:

Whether the ALJ's Step Four Residual Functional Capacity finding was supported by substantial evidence, as it failed to properly consider the Plaintiff's unsuccessful work

---

[27] *Id*.
[28] *Id*. at 26-27.
[29] *Id*. at 27.
[30] *Id*. at 29.
[31] *Id*. at 30.
[32] *Id*. at 31-32.
[33] *Id*. at 32.

attempt and the impact of her symptoms and medications side-effects on her ability to perform work at the substantial gainful activity level.[34]

Essentially, Sterling complains initially that the ALJ's RFC "lacked critical context" in that it did not specifically address the facts that:

1. Sterling almost never drives alone, which she contends is not indicative of someone who could function in a work setting.[35]

2. Her reluctance to take Xanax was not because her panic attacks were not as severe as alleged, but because a side effect of taking Xanax was to render her nearly incapacitated.[36] While the ALJ acknowledged this "in passing," he "appears to have ignored" that the side effects of all her medications were to make her "drowsy, moody and with 'variable' energy."[37]

3. Sterling testified that, due to these side effects and sleep difficulties, she needed to nap every afternoon, at which time her mother watched Sterling's children.[38]

Moreover, Sterling asserts that the ALJ neglected to address Sterling's failed attempt to resume working.[39] She argues that an unsuccessful work attempt "is highly relevant to a determination of disability, and so should have at least been considered by the ALJ in his analysis."[40] To that point, she contends that the VE here established that anyone

---

[34] ECF No. 15 at 1.
[35] *Id*. at 16.
[36] *Id*.
[37] *Id.*
[38] *Id.*
[39] *Id*. at 17.
[40] *Id.*

6

who is off-task 20 percent or more in a work shift, or absent two or more times per month cannot work competitively, and yet, she states, "[t]his is exactly what occurred during [my] unsuccessful, and accommodated, work attempt."[41]

## Analysis

**A.     Standard For Judicial Review**

This matter is considered under the well-established "substantial evidence" standard that is not contested by the parties and need not be re-stated here.

**B.     Application Of The Standard**

As is apparent from the foregoing, Sterling's single issue for judicial review is actually two related arguments:

> First, the question of whether RFC is deficient because it "lacked context" as a result of a failure to sufficiently explore and explain factors like Sterling driving alone or having sleep issues when formulating the RFC;
> Second, whether the ALJ erred by not mentioning and then explaining Sterling's failed attempt at employment in the context of an RFC that has no limitations on time she can be on task.

Regarding the first group of "context" questions, the ALJ addressed these issues repeatedly during the analysis of the four functional B criteria.

In the area of understanding, remembering and applying information, the ALJ specifically observed that Sterling reported that "her medication side effects include

---

[41] *Id.* at 18.

7

drowsiness and sleep irregularity" and that she drives her son to school every day.⁴² From this, and other evidence, the ALJ did not find that Sterling had no limitations, but rather found that Sterling's functioning in this area was affected to some degree but that the limitation was moderate. He certainly, and on the record, noted Sterling's complaints about medical side effects and her pattern as to driving.

As to interacting with others, the ALJ noted that Sterling's own testimony was that she "is able to shop in stores for groceries, clothing and personal needs" and engages in social activities weekly; she goes to the park regularly."⁴³ Similarly, in the area of concentration, persistence and pace, the ALJ noted again in the opinion Sterling's medical side effects of drowsiness and sleep irregularity, and also noted again that she drove her son to school.⁴⁴ Significantly, the ALJ also noted that by November 2016 Sterling was able to drive herself home in the dark and had not taken Xanax since July 2016.⁴⁵ And in both these areas, the ALJ made a point to emphasize that Sterling was not without limitations, but that her limitations were moderate.⁴⁶

Finally, as to adapting or managing oneself, the ALJ again explicitly took note of Sterling's medical side effects and gave a more detailed review of the evidence regarding driving.⁴⁷ The ALJ noted on the record that Sterling's testimony was that she is able to "get

---

⁴² Tr. at 15.
⁴³ *Id.* at 17.
⁴⁴ *Id.* at 18.
⁴⁵ *Id.*
⁴⁶ *Id.* at 19.
⁴⁷ *Id.*

around by walking or driving" although "she does not drive alone" and "sometimes needs to be driven."[48] Further, she also told a counselor in 2016 that she "was able to drive herself home in the dark" and in 2017 that "she was not scared to be in the car with her children."[49] In light of all this, the ALJ once more concluded that there were moderate limitations in this area.[50]

In short, far from providing "no context" for the RFC because he failed to set out and discuss the facts concerning driving issues and matters pertaining to medical side effects and sleep problems, the ALJ here on multiple occasions took note of these precise issues as part of an analysis of various areas of functioning and reached a reasoned conclusion that was thoroughly explained.

Moreover, as to any issue alleging that the ALJ misread the evidence regarding Sterling's use of and then discontinuing Xanax, the Commissioner correctly observes that Sterling's treatment records show that she discontinued Xanax after she was successfully given Buspar to as an alternative to Zoloft.[51] As detailed by the ALJ, on June 20, 2017, Sterling's doctor switched her from Zoloft to Buspar.[52] At a follow-up appointment on July 10, 2017, Sterling reported she was doing better with the switch, such that she "had not required any Xanax…."[53] Over a year later, on December 19, 2017, she stated that her

---

[48] *Id*.
[49] *Id*.
[50] *Id*.
[51] *Id*. at 22.
[52] *Id*.
[53] *Id*.

9

anxiety was "okay" and that she "was taking Xanax sparingly, as her last prescription was in July of 2016."[54]

While Sterling claims that her infrequent use of Xanax was because it renders her "nearly incapacitated,"[55] the fact, apparent on the record, is that she herself reported on several occasions that her anxiety was stable without Xanax and that she was "managing a lot better overall" and was "more motivated"[56] with sparing use of Xanax. Any decision by the ALJ to cite this evidence for that conclusion is both consistent with the evidence and within the Commissioner's zone of choice.

Finally, as to Sterling's claim that her prior unsuccessful attempt at working should have been analyzed as it allegedly shows she would be off-task to a detrimental degree, I note first, as does the Commissioner, that "[a]n unsuccessful work attempt is a carve-out from the ALJ's determination [at Step One] of whether a claimant has engaged in substantial gainful activity."[57] That said, "[u]nsuccessful work attempts may serve as evidence that an individual is unfit for work, but this evidence, on its own, does not require the Commissioner to conclude that the person is disabled."[58]

---

[54] *Id*. at 23.
[55] ECF No. 15 at 16.
[56] Tr. at 22-23.
[57] *Vires v. Berryhill*, 2017 WL 36684430, at * 4 (E.D. Ky. Aug. 24, 2017) (citing 20 C.F.R. § 404.1574(a)(1)).
[58] *Anderson v. Comm'r of Soc. Sec.*, 2014 WL 346296, at *9 (N.D. Ohio Jan. 20, 2014) (citation omitted).

Further, as the Commissioner notes, a job that lasted longer than six months does not qualify as an unsuccessful work attempt.[59] Here, by Sterlings' own testimony, the job in question lasted "over a year."[60] As such, it was not an unsuccessful work attempt.

In a somewhat analogous situation, Judge Oliver, in *Brown v. Commissioner of Social Security*,[61] considered an argument by the claimant that because she could not maintain a job as a general laborer during the time between the alleged onset date and the hearing, and because the job of general laborer fell within the terms of the RFC, that undermined the RFC.[62] Judge Oliver reasoned that while unsuccessful work attempts are relevant at Step One to the question of whether the claimant had engaged in substantial gainful employment during the period of disability, such an unsuccessful work attempt does not undermine a finding, based on substantial evidence, that such a claimant can, under the RFC, engage in a number of jobs in the national economy.[63]

Here, Sterling's work experience was not, by definition, an unsuccessful work attempt. But even if it were, Judge Oliver's logic in Brown shows that the finding here that Sterling could do work in the national economy pursuant to the RFC would not be threatened by that prior work attempt since the present finding was supported by substantial

---

[59] 20 C.F.R. § 404.1574 (c)(4).
[60] Tr. at 62-63.
[61] 2011 WL 1630169 (N.D. Ohio April 29, 2011).
[62] *Id*. at *2.
[63] *Id.*

11

evidence. I thus recommend finding that the Commissioner's decision in this regard is not erroneous.

## Conclusion

For the foregoing reasons, I recommend that the decision of the Commissioner denying disability insurance benefits to Sarah Kate Sterling be affirmed.

IT IS SO RECOMMENDED.

Dated: July 12, 2021                                    s/William H. Baughman Jr.
                                                        United States Magistrate Judge

**Objections**

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days of receipt of this notice. Failure to file objections within the specified time waives the right to appeal the District Court's order.[64]

---

[64] *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).